# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED SUPPLIERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MILLARD FEED MILL, INC., <br><br> Defendant. | No. 09-CV-107-LRR <br><br> **ORDER** |

## *I. INTRODUCTION*

The matter before the court is Defendant Millard Feed Mill, Inc.'s "Motion to Dismiss, Pursuant to Fed. R. Civ. P. 12(b)(2), for Lack of Personal Jurisdiction" ("Motion") (docket no. 6).

## *II. PROCEDURAL BACKGROUND*

On August 11, 2009, Plaintiff United Suppliers, Inc. filed a Complaint (docket no. 1). Plaintiff alleges that Defendant breached a number of contracts. Plaintiff seeks damages, interest and attorney fees.

On September 11, 2009, Defendant filed the Motion. On September 28, 2009, Plaintiff filed a Resistance (docket no. 13). On October 2, 2009, Plaintiff filed a "Notice of Supplemental Evidence in Support of Plaintiff's Resistance to Defendant's Rule 12(b)(2) Motion to Dismiss" ("Supplement") (docket no. 14). That same date, Defendant filed a Reply (docket no. 15).

On October 8, 2009, Defendant filed a "Motion to Strike [the Supplement]" ("Motion to Strike") (docket no. 17). On December 8, 2009, the court denied the Motion to Strike. Order (docket no. 20). The court gave Defendant permission to file a surreply in response to the Supplement. On December 15, 2009, Defendant filed a Surreply (docket no. 21).

## III. SUBJECT MATTER JURISDICTION

There is complete diversity of citizenship among the parties. The amount in controversy exceeds $75,000. The court is satisfied that it has diversity subject matter jurisdiction over the instant action. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [. . .] citizens of different States[.]").

## IV. STANDARD OF REVIEW

The party seeking to establish jurisdiction bears the burden to prove it exists. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004). At this stage in the proceedings, Plaintiff need not prove personal jurisdiction by a preponderance of the evidence. *Id.* at 983. Rather, Plaintiff need only make a *prima facie* showing of jurisdiction. *Id.* Plaintiff may use affidavits, exhibits or other evidence to meet its burden. *Id.* The court must review the evidence in the light most favorable to the non-moving party. *Id.*

## V. FACTUAL BACKGROUND

Viewing the facts in the light most favorable to the non-moving party, Plaintiff, the facts are:

### A. Parties

Plaintiff is an Iowa corporation with its principal place of business in Eldora, Iowa. Plaintiff sells fertilizer. Defendant is a Wisconsin corporation with its principal place of business in Elkhorn, Wisconsin. Defendant is in the business of "buying and selling crops, fertilizers, livestock food[] and other animal and farm related products." Affidavit of Robert Cook (docket no. 6-2), at ¶ 7.

### B. Parties' Relationship

Since 2005, Defendant has purchased fertilizer from Plaintiff pursuant to a number

of contracts. Aside from an agent of Plaintiff making in-person sales calls in Wisconsin, the parties had no other in-person contact. The parties negotiated the terms of the contracts from their respective offices by telephone, fax and mail. Occasionally, Defendant initiated contact with Plaintiff in Iowa by phone to discuss product pricing and potential purchases. Defendant's agents never traveled to Iowa for contract negotiations. When the parties were prepared to execute a contract, Plaintiff mailed a copy of a form contract to Defendant for signature. Defendant returned the signed form contracts to Plaintiff by mail or fax.

Defendant does not have any ownership interest in real estate, bank accounts or other property located in Iowa. Defendant has never litigated in Iowa. Defendant does not maintain any office, telephone, agent, employee or distributor in Iowa.

### C. *Disputed Contracts*

Several years into the parties' relationship, the parties entered into four contracts, Contracts A-D (collectively, "Disputed Contracts"), pursuant to which Plaintiff agreed to sell Defendant fertilizer. The Disputed Contracts required Defendant to prepay a certain amount before delivery. After delivery, Defendant had to pay the outstanding balance on each Disputed Contract by a certain date.

On July 10, 2008, the parties executed Contract A. In Contract A, the parties agreed to the sale of 200 tons of fertilizer for $1,025.00 per ton. Contract A required Defendant to prepay $51,250.00 and to pay the balance, $153,750.00, by March 1, 2009. Defendant made the required prepayment but failed to pay the balance.

On July 19, 2008, the parties executed Contract B. In Contract B, the parties agreed to the sale of 100 tons of fertilizer for $496.00 per ton. Contract B required Defendant to prepay $12,400.00 and to pay the balance, $37,200.00, by March 1, 2009. Defendant made the required prepayment but failed to pay the balance.

On July 31, 2008, the parties executed Contract C. In Contract C, the parties

agreed to the sale of 1,300 tons of fertilizer for $545.00 per ton. Contract C required Defendant to prepay $177,125.00 and to pay the balance, $531,375.00, by March 1, 2009. Defendant made the required prepayment but failed to pay the balance.

On July 31, 2008, the parties executed Contract D. In Contract D, the parties agreed to the sale of 400 tons of fertilizer for $900.00 per ton. Contract D required Defendant to prepay $90,000.00 and to pay the balance, $270,000.00, by January 15, 2009. Defendant made the required prepayment but failed to pay the balance.

In each instance, Plaintiff tendered the fertilizer, but Defendant refused to pick up the product as provided in the Disputed Contracts. Defendant owes Plaintiff $992,325.00 plus penalties, interest and other costs.

### D. *Delivery of the Fertilizer*

#### *1. Delivery terms in the Disputed Contracts*

The Disputed Contracts specified the terms of delivery of the fertilizer. Specifically, the Disputed Contracts stated: "SHIPPING TERMS: Cust Arr FOB." Disputed Contracts (docket nos. 1-2-5) (emphasis in original). The parties agree that this required Plaintiff to pay for transportation of the fertilizer to a certain port of shipment, and that Defendant was responsible for transporting the fertilizer from the port of shipment to its place of business. The port of shipment identified in the Disputed Contracts varies. Contracts A-C state: "TERMINAL: E DUBUQUE." *Id.* (emphasis in original). In contrast, Contract D states: "TERMINAL: DUBUQUE." Contract D at 1 (emphasis in original). The parties agree that "DUBUQUE" refers to Dubuque, Iowa and "E DUBUQUE" refers to East Dubuque, Illinois. The parties also agree that Plaintiff was required to deliver the fertilizer identifed in Contracts A-C to a location in East Dubuque, Illinois. In contrast, Plaintiff was required to deliver the fertilizer identified in Contract D to a location in Dubuque, Iowa. Whether the parties agreed to delivery in Dubuque, Iowa or East Dubuque, Illinois, Defendant was required to pick up the product in the

4

designated location.

Defendant never picked up the fertilizer identified in the Disputed Contracts. Defendant states that any effort to pick up the fertilizer would have been futile because Plaintiff had failed to deliver it to the designated port of shipment.

### 2. *Delivery terms in other contracts*

Prior to their execution of the Disputed Contracts, the parties had entered into five other sales contracts that designated Dubuque, Iowa as the delivery location ("Iowa Contracts").[1] The Iowa Contracts are dated April 24, 2007, October 5, 2007, January 22, 2008, February 25, 2008 and July 29, 2008. The Iowa Contracts state that the port of shipment is Dubuque, Iowa. The parties performed the Iowa Contracts in accordance with their terms. In other words, at various points from April of 2007 through July of 2008, Defendant picked up the fertilizer identified in the Iowa Contracts in Dubuque, Iowa.

## VI. LEGAL ANALYSIS

Defendant contends that it has insufficient contacts with Iowa for this court to exercise personal jurisdiction over it. Accordingly, Defendant asks the court to dismiss it from the instant action pursuant to Federal Rule of Civil Procedure 12(b)(2).

### A. *Legal Standards*

"A federal court may exercise personal jurisdiction over a nonresident defendant only if doing so is consistent with both the forum state's long-arm statute and the requirements of the Due Process Clause." *Primus Corp. v. Centreformat Ltd.*, 221 F. App'x 492, 493 (8th Cir. 2007) (per curiam) (citing *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)). Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ.

---

[1] The Affidavit of Matthew Carstens ("Carstens Aff.") (docket no. 14-1) identifies three other sales contracts that purport to designate delivery in Dubuque, Iowa. However, these contracts are unsigned and Defendant disputes their authenticity. Accordingly, the court does not consider these unsigned contracts in the instant analysis.

5

P. 1.306; *see also Hicklin Eng'g., Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (2005) (same); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction comports with due process. *Hicklin*, 959 F.2d at 739.

"The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "'Sufficient contacts exist when the defendant's conduct and the connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1090-91 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)). "'In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 1091 (quoting *Bell Paper Box*, 22 F.3d at 818-19). The Eighth Circuit Court of Appeals has "adopted 'a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Id.* (quoting *Bell Paper Box*, 22 F.3d at 818-19).[2]

---

[2] "With respect to the third factor, [the Eighth Circuit Court of Appeals] distinguish[es] between specific jurisdiction and general jurisdiction." *Id.* "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous
(continued…)

With these principles in mind, the court examines whether Plaintiff has made a *prima facie* showing of personal jurisdiction.

### B. Personal Jurisdiction Analysis

#### 1. *Nature, quantity, quality & relatedness of contacts*

The court first examines the nature, quantity, quality and relatedness of Defendant's contacts with Iowa. The undisputed evidence in the record shows: (1) Defendant is a Wisconsin corporation with its principal place of business in Wisconsin; (2) Defendant had a course of dealing with Plaintiff pursuant to which it picked up fertilizer in Dubuque, Iowa on at least five occasions during the year leading up to the execution of the Disputed Contracts; (3) Defendant occasionally initiated contact with Plaintiff in Iowa by phone about product pricing and future potential purchases; (4) aside from picking up the fertilizer in Dubuque, Iowa, Defendant's agents and employees did not go to Iowa; (5) Defendant conducted most of its business with Plaintiff by telephone, fax and mail; (6) Defendant does not own any personal or real property in Iowa; and (7) Defendant does not do business in Iowa.

Defendant's primary contacts with Iowa are derived from the Iowa Contracts. Other contacts include Defendant's occasional initiation of discussion with Plaintiff's employees in Iowa and Contract D, which designated delivery in Dubuque, Iowa. The court notes that "'[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state.'" *Bell Paper Box v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *Iowa*

---

²(…continued)
and systematic, even if limited, part of its general business; in such circumstances[,] the alleged injury need not have any connection with the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). The parties agree that general jurisdiction does not exist in the instant action. Accordingly, the court need not conduct a general jurisdiction analysis.

*Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)) (alterations in *Bell Paper Box*). "This is particularly true when the non-resident defendant is a buyer, rather than a seller." *Id.* (citing *Precision Const. Co. v. J.A. Slattery Co.*, 765 F.2d 114, 118 (8th Cir. 1985)). Even though a party may "anticipate[] performance" of the contract in Iowa, "foreseeability of an impact within the forum *alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (emphasis added) (internal quotation marks omitted)). However, when coupled with Defendant's other contacts, namely, the Iowa Contracts, the foreseeability of Defendant's contact with Iowa in its performance of Contract D becomes meaningful. The court finds that the quantity of Defendant's contacts with Iowa weighs in favor of the court's exercise of jurisdiction.

The quality of Defendant's contacts with Iowa also weighs in favor of the court's exercise of personal jurisdiction. The Iowa Contracts provide that, on five occasions between October of 2007 and July of 2008, Defendant had to pick up the fertilizer that Plaintiff had delivered in Dubuque, Iowa. The parties "performed each of their respective obligations under the terms of the [Iowa Contracts], including the condition that [Defendant] would pick up the product bargained for at [Plaintiff]'s Dubuque Facility in Iowa." Carstens Aff. at ¶ 4. Defendant has failed to refute these contentions with any evidence.[3]

The Iowa Contracts demonstrate a course of dealing between the parties to deliver and pick up fertilizer in Dubuque, Iowa. *See* Iowa Code § 554.1303(2) ("A 'course of

---

[3] Instead, Defendant argues that, despite the evidence contained in the Supplement, Plaintiff "relies solely upon the 'FOB' provisions of the [Iowa Contracts], without providing any evidence that [Defendant] ever actually entered the State of Iowa, or purposely conducted any business there." Surreply at 2. This contention disregards Plaintiff's averment that the parties fully performed the Iowa Contracts, including provisions related to delivery.

8

dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."). This course of dealing is highly relevant to the court's analysis of the quality of Defendant's contacts with Iowa, because it places the Disputed Contracts into context. *See Ross v. First Sav. Bank of Arlington*, 675 N.W.2d 812, 816 (Iowa 2004) ("[T]he minimum contacts test looks to the entire transaction—prior negotiations, contemplated future consequences, terms of the contract, and the course of dealings—to assess the sufficiency of the defendant's contacts.") (citing *Hager v. Doubletree*, 440 N.W.2d 603, 607 (Iowa 1989)).

In light of the parties' course of dealing to deliver and pick up fertilizer in Dubuque, Iowa, Defendant's occasional initiation of contact with Plaintiff's employees in Iowa and the anticipated delivery of fertilizer purchased pursuant to Contract D, the court finds that the quality of Defendant's contacts with Iowa weigh in favor of the court's exercise of personal jurisdiction over Defendant. In order to pick up the fertilizer Plaintiff delivered pursuant to the Iowa Contracts, Defendant or its agents had to physically enter the state of Iowa. In other words, when it performed the Iowa Contracts, Defendant took actions to "purposefully avail[] itself of the privilege of conducting activities within [Iowa], thus invoking the benefits and protections of its laws.'" *Miller*, 528 F.3d at 1090 (internal quotation marks omitted). In light of its business practice of picking up fertilizer in Dubuque, Iowa, Defendant should have reasonably anticipated being haled into court in Iowa.

Further, the court finds that Defendant's contacts with Iowa, through the Iowa Contracts and otherwise, are closely related to the facts underlying the dispute over the Disputed Contracts. The Disputed Contracts use the same form contract as the Iowa Contracts. Defendant's performance of the Iowa Contracts establishes that the parties had a course of dealing pursuant to which Defendant picked up fertilizer that Plaintiff delivered

9

in Dubuque, Iowa. And, one of the contracts at issue in the instant dispute, Contract D, provides that the parties agreed to effectuate delivery of the fertilizer in a manner consistent with their course of dealing. That is, the parties agreed to deliver the fertilizer at issue in Contract D to Dubuque, Iowa.

### 2. *Interest of the forum state*

The parties do not dispute that Iowa has an interest in providing a forum for its residents. *Miller*, 528 F.3d at 1091. The court finds that the interest of the forum state weighs in favor of the court's exercise of jurisdiction over Defendant.

### 3. *Convenience of the parties*

Plaintiff argues that Iowa would be more convenient than Wisconsin. Defendant argues that Wisconsin would be more convenient than Iowa. The court finds that the convenience of the parties does not weigh for or against the court's exercise of personal jurisdiction over Defendant.

### 4. *Summary*

In conclusion, the court finds that Plaintiff has made a *prima facie* showing that the court may exercise personal jurisdiction over Defendant. Accordingly, the court shall deny the Motion.

## VII. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED** that the Motion (docket no. 6) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 19th day of January, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA